Loan No. 2481455

# COMMERCIAL PROMISSORY NOTE

**SHAFER PLAZA LII, LTD.,**
**a Texas limited partnership**

**FIRST UNITED BANK AND TRUST**
**COMPANY**

**3001 Knox Street, Suite 207**

**1700 Redbud Boulevard, Suite 130**

**Dallas, Texas 75205**
(hereafter called "Borrower")

**McKinney, Texas 75069**
(hereafter called "Lender")

| $4,650,000.00 | December 5, 2006 | December 5, 2009 |
|---|---|---|
| Note Amount | Effective Date | Maturity Date |

**FOR VALUE RECEIVED**, Borrower, jointly and severally if more than one, promises to pay to the order of Lender (which term shall include all subsequent holders of this Note) at its offices set forth above or at such other address as Lender may from time to time designate, in lawful money of the United States of America, the principal sum of **Four Million Six Hundred Fifty Thousand and 00/100 Dollars ($4,650,000.00)**, or so much thereof as may be advanced and outstanding from time to time, with interest at the rate provided below on the principal balance from time to time remaining unpaid, in the amounts, at the times and upon the terms provided in this Note. This Note is performable in Collin County, Texas.

**NON-REVOLVING MULTIPLE ADVANCE NOTE.** During the term of this Note (assuming no Event of Default under this Note or any other Loan Document) the Lender may, following compliance with Lender's requirements, make advances at Borrower's request and Borrower will make payments, all as provided herein, resulting in a fluctuating unpaid principal balance on the indebtedness during the term of this Note, provided, however, that there will never be owed on this Note, an amount greater than the principal sum of $4,650,000.00 and Lender shall not re-advance any amounts which may have been paid upon the principal balance.

**INTEREST RATE.** Interest shall accrue on the unpaid balance of this Note from time to time outstanding which is not past due, calculated on a 360 day annual basis (the "Rate"), except as otherwise provided herein, as follows:

The lesser of (a) the Loan Rate (hereinafter defined) in effect from day to day or (b) the Highest Lawful Rate (hereinafter defined) in effect from day to day. The term "Loan Rate" shall mean the sum of **One percent (1.0%)** and the Index as hereafter defined. The Loan Rate shall be subject to change daily with changes in the Index.

Any change in either the Loan Rate or the Highest Lawful Rate shall, after Lender gives only such notice as may be required by applicable law or regulation, be effective for purposes of determining the Rate as of the opening of business on the date of any such change.

The Index is The Wall Street Journal Prime Rate which is the highest rate shown as the base rate on corporate loans posted by at least 75% of the nation's 30 largest banks as published daily in the Money Rates Section of the Wall Street Journal.

As of the date hereof, the Lesser of the Loan Rate and the Highest Lawful Rate is **9.25%.**

wdk\ad\shafer plaza\note

2481455 Promissory Note Pg: 1
Due Date: 12/13/2006 3:14:11 PM
Print Date: 12/13/2006 08:46:14

INITIALS ___ ___



The "Highest Lawful Rate" is the maximum lawful rate which may be contracted for, charged, taken, received, or reserved by Lender in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all charges made in connection with this loan which are treated as interest under applicable law.

If at any time (i) the Loan Rate, (ii) interest on matured unpaid amounts, if applicable, as provided for herein or in any of the other Loan Documents, together with (iii) all fees and charges, if any, contracted for, charged, received, taken or reserved by Lender in connection with the loan evidenced hereby which are treated as interest under applicable law (collectively, the "Charges"), computed over the full term of this Note, exceed the Highest Lawful Rate, the rate of interest payable hereunder, together with all Charges, shall be limited to the Highest Lawful Rate; provided, however, that any subsequent reduction in the Loan Rate shall not cause a reduction of the rate of interest payable hereunder below the Highest Lawful Rate until the total amount of interest earned hereunder, together with all Charges, equals the total amount of interest which would have accrued at the Loan Rate if such interest rate had at all times been in effect. Changes in the Loan Rate resulting from a change in the Index shall be subject to the provisions of this paragraph.

**PREPAYMENT.** Borrower may prepay this Note in whole or in part at any time without being required to pay any penalty or premium for such privilege. In the event a prepayment is made, such payment shall be applied first against accrued but unpaid interest, then to the discharge of any expenses for which the holder of this Note may be entitled to receive reimbursement under the terms of this Note or under the terms of any other documents related thereto and lastly against the principal hereof. Any partial prepayment shall not postpone the due date or change the amount of any subsequent installment due hereunder.

**PAST DUE PAYMENTS.** Lender may charge and collect a late fee of up to **five percent (5%)** of any scheduled installment of principal more than 15 days past due to the extent not prohibited by law. The annual interest rate on matured unpaid amounts shall be **eighteen percent (18%)**.

**DISHONORED CHECK CHARGE.** Lender may charge and collect a processing fee of up to **$25.00** for each check given by Borrower to Lender as a payment on this loan which is dishonored.

**PAYMENT TERMS.** This Note shall be due and payable as follows:

Interest only, shall be due and payable monthly, as it accrues, on the 5th day of each and every calendar month, beginning **January 5, 2007,** and continuing regularly and monthly thereafter until **December 5, 2008.** Thereafter, principal and interest shall be amortized over twenty-five (25) years (the "Amortized Term"), with monthly installments of principal and interest, payable on the 5th day of each and every calendar month, beginning **January 5, 2009,** and continuing regularly and monthly thereafter. Annually thereafter, monthly installments in each succeeding twelve (12) month period, shall be adjusted to equal the amount necessary to amortize the unpaid principal balance over the remaining portion of the Amortized Term of this Note; interest being calculated on the unpaid principal to the date of each installment paid and the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal.

On **December 5, 2009,** all principal and interest then remaining unpaid, shall be then due and payable.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER WILL HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER. THIS LENDER WILL CONSIDER AN APPLICATION TO REFINANCE THE BALLOON PAYMENT AT THE TIME PAYMENT IS DUE, ON THE SAME BASIS AS ALL OTHER NEW MORTGAGE LOAN APPLICATIONS.

**WAIVER.** Except as otherwise expressly stated in any of the Loan Documents, Borrower and any and all co-borrowers, endorsers, guarantors, and sureties severally waive notice, notice of intent to accelerate, notice of acceleration, demand, grace, presentment for payment, and protest and agree that this Note and all liens securing its payment may be extended and re-extended and the time for payment extended and re-extended from time to time without notice to them or any of them, and they severally agree that their liability on or with respect to this Note shall not be affected by any release or change in any security at any time existing or by any failure to perfect or maintain perfection of any security interest in such security.

**TIME OF THE ESSENCE.** It is agreed that time is of the essence in the performance of this Note.

**EVENTS OF DEFAULT.** Each of the following events shall constitute an Event of Default:

1.  Default in the timely payment of any installment of principal and interest or in the performance of any covenant or provision of any Loan Document as hereafter defined.

2.  Default in payment when due of any amount (other than principal and interest) payable to Lender or default in any other obligation of Borrower to Lender.

3.  Borrower, or any Guarantor, shall:  (a) execute an assignment for the benefit of creditors or take any action in furtherance thereof;  or  (b) admit in writing its inability to pay its debts generally as they become due; or (c) as a debtor, file a petition, case, proceeding, or other action pursuant to, or voluntarily seek the benefit or benefits of any debtor relief law or take any action in furtherance thereof; or (d) seek, acquiesce in, or suffer the appointment of a receiver, trustee, or custodian of Borrower, any Guarantor, the Property as herein defined, in whole or in part, or any significant portion of other property belonging to Borrower or any Guarantor that affects performance under this Note; or (e) voluntarily become a party to any proceeding seeking to effect a suspension or having the effect of suspending any of the rights of Lender or the Trustee granted or referred to in the Loan Documents or take any action in furtherance thereof.

4.  The filing of a petition, case, proceeding, or other action against Borrower, or any Guarantor, as a debtor under any debtor relief law; or seeking appointment of a receiver, trustee, or custodian of Borrower, or any Guarantor, or of any property described in the Loan Documents or any part thereof, or of any significant portion of other property belonging to Borrower or any Guarantor, that affects its ability to perform under this Note, or seeking to effect a suspension or having the effect of suspending any of the rights of Lender or the Trustee granted  or referred to in the Loan Documents, and: (a) Borrower or any Guarantor admits, acquiesces in, or fails to contest the material allegations thereof; or (b) the petition, case, proceeding, or other action results in entry of an order for relief or order granting the relief sought against Borrower or any

Guarantor; or (c) the petition, case, proceeding, or other action is not permanently dismissed on or before the earlier of trial thereon or sixty (60) days next following the date of its filing.

5. The discovery by Lender that any warranty, covenant, or representation made to Lender by or on behalf of Borrower or any Guarantor is false, misleading, erroneous, or breached in any material respect.

A default shall not be an Event of Default if the default is cured within ten (10) days for a monetary default and thirty (30) days for a non-monetary default, following the delivery of or the mailing of written notice from Lender to Borrower's most current address as reflected in Lender's business records specifying the existence of any such default. If such default is not cured within the applicable ten (10) day or thirty (30) day period, the default shall be an Event of Default without need of any further notice or action by Lender.

**ACCELERATION AND WAIVER OF NOTICE.** Upon the occurrence of an Event of Default, the entire unpaid principal balance plus all accrued and unpaid interest due and owing on this Note and any and all other indebtedness of Borrower to Lender shall, at the option of Lender, become and be due and payable forthwith without demand, notice of default, notice of intent to accelerate, or the acceleration of the maturity hereof, notice of nonpayment, presentment, protest, or notice of dishonor, all of which are hereby expressly waived to the full extent not prohibited by law by Borrower and each other liable party. Failure to exercise this option upon the occurrence of any such Event of Default shall not constitute a waiver of the right to exercise such option in the event of any subsequent Event of Default.

**COLLECTION COSTS AND JOINT AND SEVERAL LIABILITY.** If the unpaid principal balance plus all accrued and unpaid interest due and owing on this Note is not paid at maturity, whether by acceleration or otherwise, and this Note is placed in the hands of an attorney for collection, or suit is filed hereon, or proceedings are had in probate, bankruptcy, receivership, reorganization, arrangement, or other legal proceedings for collection hereof, Borrower and each other liable party agree to pay Lender its reasonable collection costs, including a reasonable amount for attorneys' fees. Borrower and each other liable party is and shall be directly and primarily, jointly and severally, liable for the payment of all sums due hereunder, under the Loan Documents and under any instrument securing the payment hereof, and Borrower and each other liable party hereby expressly waives bringing of suit and diligence in taking any action to collect any sums owing hereon and in the handling of any security, and Borrower and each other liable party hereby consents to and agrees to remain liable hereon regardless of any renewals, extensions for any period or rearrangements hereof, or any release or substitution of security hereof in whole or in part, with or without notice, from time to time, before or after maturity.

**LOAN CHARGES.** It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with the applicable Texas law governing the maximum rate or amount of interest payable on this Note or the indebtedness evidenced hereby and by the other Loan Documents (or applicable United States federal law to the extent that it permits the Borrower to contract for, charge, take, reserve or receive a greater amount of interest than under Texas law). If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note or contracted for, charged, taken, reserved or received with respect to such indebtedness, or if Borrower's exercise of the option herein contained to accelerate the maturity of this Note or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Borrower's and Lender's express intent that all excess amounts theretofore collected by Lender be credited on the principal balance of this Note (or, if this Note has been or would thereby be paid in full, refunded to Borrower), and the provisions of this Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced,

without the necessity of the execution of any new document, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder. Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration. All sums paid or agreed to be paid by Lender for the use, forbearance or detention of the indebtedness evidenced hereby and by the other Loan Documents shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the usury ceiling from time to time in effect and applicable to such indebtedness evidenced hereby for so long as debt is outstanding. To the extent that Lender is relying on the Texas Finance Code, as amended, to determine the Highest Lawful Rate payable on such indebtedness, Lender will utilize the indicated (weekly) rate ceiling from time to time in effect. To the extent United States federal law permits Lender to contract for, charge or receive a greater amount of interest, Lender will rely on United States federal law instead of the Texas Finance Code, as amended, for the purpose of determining the Highest Lawful Rate. Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, implement any other method of computing the Highest Lawful Rate under any other applicable law by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect.

**RIGHT OF SET OFF.** Borrower grants to Lender a contractual possessory security interest in and hereby assigns, conveys, delivers, pledges, and transfers to Lender, all Borrower's right, title and interest in and to Borrower's accounts with Lender (whether checking, savings or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA, Keogh and trust accounts. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set off all sums owing on this Note against any and all such amounts.

**ADDITIONAL SECURITY.** This Note is secured by all security agreements, collateral assignments, assignments, guaranties, deeds of trust, and lien instruments executed by Borrower (or by any Guarantor) in favor of Lender or any other holder of this Note, including those executed simultaneously herewith, those executed heretofore and those hereafter executed, and by all such agreements, assignments, guaranties, and security instruments securing the payment of all other indebtedness of Borrower to Lender.

**REMEDIES OF LENDER.** Lender shall have all rights, remedies, and recourses granted in this Note, the Loan Documents and all other instruments securing the payment hereof and the payment of all indebtedness of Borrower to Lender, howsoever evidenced, and those which are available at law or equity, and same: (a) shall be cumulative and concurrent; (b) may be pursued separately, successively, or concurrently against Borrower or any other liable party or against any one or more of them at the sole discretion of Lender and in such order as Lender, in its sole discretion, shall determine; (c) may be exercised as often as occasion therefore shall arise, it being agreed by Borrower that the exercise or failure to exercise any of the same shall in no event be construed as a waiver or release thereof or of any other right, remedy, or recourse; and (d) are intended to be, and shall be, nonexclusive. If any part of this Note cannot be enforced, this fact will not affect the rest of this Note. This loan shall be governed by and construed in accordance with the laws of the State of Texas and applicable United States federal law.

**NOTICES TO BORROWER AND OTHER PARTIES.** Any notice under this Note shall be in writing and shall be effective when actually delivered or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified mail, postage prepaid, directed to the addresses shown near the beginning of this Note. Any party may change its address for notices under this Note by

giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.

**JURY TRIAL WAIVER.** In recognition of the higher costs and delay which may result from a jury trial, the parties waive any right to trial by jury of any claim, demand, action or cause of action (a) arising hereunder, or (b) in any way connected with or related or incidental to the dealings of the parties hereto or any of them with respect hereto, in each case whether now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and each party further waives any right to consolidate any such action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived; and each party hereby agrees and consents that any such claim, demand, action or cause of action shall be decided by court trial without a jury, and that any party hereto may file an original counterpart or a copy of this section with any court as written evidence of this consent of the parties hereto to the waiver of their right to trial by jury.

**LOAN DOCUMENTS.** This Note and all other instruments executed in connection herewith and/or securing repayment hereof (the "Loan Documents"), including but not limited to:

(a) The Additional Security as described above.

(b) Commercial Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents executed by Borrower to **GREG MASSEY**, Trustee for the benefit of Lender and any subsequent holder of this Note, of even date herewith.

(c) Loan Agreement executed by Borrower for the benefit of Lender and any subsequent holder of this Note, of even date herewith.

(d) Commercial Guaranty Agreement executed by STEVEN G. SHAFER for the benefit of Lender and any subsequent holder of this Note, of even date herewith.

**PROPERTY.** The property described in the Loan Documents (the "Property") is:

**Being a portion of Lot 2, Block A, of PRESTON CENTER, PHASE I, an Addition to the City of Frisco, Collin County, Texas, according to the Plat thereof recorded in Volume H, Page 404, Map Records, Collin County, Texas, together with an Easement Estate, both tracts being more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes.**

INITIALS 

SHAFER PLAZA LII, LTD., a Texas limited partnership

BY: SHAFER PLAZA FIFTY TWO CM, LLC,
    a Texas limited liability company,
    General Partner

BY: _____
    STEVEN G. SHAFER, Manager

Prepared in the Law Office of:

William David Keese, P.C.
1400 West Main Street
Durant, Oklahoma 74701

## EXHIBIT A

TRACT 1

BEING all that certain lot, tract or parcel of land out of the George McNeil Survey, Abstract No. 608 in the City of Frisco, Collin County, Texas, and being part of the property conveyed to Makolet Venture, Ltd., by deed recorded in County Clerks File Number 20060502000585480 of the Deed Records of Collin County, Texas, and also being a part of Lot 2 in Block A of Preston Center Phase1, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet H, Slide 404 of the Plat Records of Collin County, Texas, and being more particularly being described by metes and bounds as follows:

BEGINNING at a 5/8" iron rod found for the Northeast corner of said Lot 2 in Block A, of Preston Center Phase 1, said point also being the Southeast corner of Lot 1B in Block A of Preston Center Addition, an addition to the City of Frisco, Texas, according to plat thereof recorded in Cabinet I, Slide 454 of the Plat Records of Collin County, Texas;

Thence South 11 degrees 51 minutes 00 seconds West (Basis of Bearings per plat recorded in Cabinet "H", Slide 404 of the Plat Records of Collin County, Texas) along the East line of said Lot 2 in Block A of Preston Center Phase 1, for a distance of 290.00 feet to a 1/2" iron rod found for the Southeast corner of said Lot 2;

Thence North 78 degrees 09 minutes 00 seconds West along the South line of said Lot 2 and being common to a 6.4712 acre tract of land conveyed to Folsom Preston, Ltd., by deed recorded in Volume 4052 at Page 2918 of the Deed Records of Collin County, Texas, for a distance of 258.00 feet to a nail found in concrete for corner;

Thence South 11°51'00" West and continuing along the line of Lot 2 for a distance of 30.00 feet to a nail found in concrete for corner;

Thence North 78°09'00" West and continuing along the South line of said Lot 2 for a distance of 351.00 feet to a 5/8" iron rod set for corner in the East right of way line of Preston Road (State Highway No. 289) as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, said point being South 78°09' East at a distance of 11.00 feet from the Southwest corner of said Lot 2;

THENCE North 11°51'00" East and following the East right of way line of Preston Road as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, for a distance of 9.99 feet to a 5/8" iron rod set for corner, said point being the beginning of a curve to the left having a central angle of 03°03'52" with a radius of 5800.58 feet and a chord bearing North 10°19'34" East at a distance of 310.22 feet;

THENCE Northeasterly along said curve to the left and following the East right of way line of Preston Road as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, for an arc distance of 310.25 feet to a 5/8" iron rod

set for corner, said point being in the North line of said Lot 2 in Block A of Preston Center Phase 1 and being South 78°09'00" East at a distance of 11.00 feet from the Northwest corner of said Lot 2;

THENCE South 78°09'00" East along the North line of said Lot 2 and passing the Southwest corner of the aforesaid mentioned Lot 1B at a distance of 204.82 feet and continuing along the common line of Lot 2 and Lot 1B for a distance of 412.43 feet to the POINT OF BEGINNING AND CONTAINING 4.3163 ACRES OF LAND, more or less.

## TRACT 2:

EASEMENT ESTATE created by that certain Easement with Covenants and Restrictions Affecting Land (ECR) by and between FM 720-Preston Ltd., a Texas limited partnership with Stratford Land Investments, Inc., a Texas corporation, as general partner and Brookshire Grocery Company, a Texas corporation, dated 08/13/1992, filed 08/17/1992, recorded under cc# 92-0055264, Real Property Records, Collin County, Texas.

## MODIFICATION AGREEMENT

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**SHAFER PLAZA LII, LTD., a**
**Texas limited partnership**

**4403 North Central Expressway, Suite 100**

**Dallas, Texas 75205**
(hereinafter called "Borrower")

**FIRST UNITED BANK AND TRUST COMPANY**

**12720 Hillcrest Road, Suite 350**

**Dallas, Texas 75230**
(hereinafter called "Lender")

STATE OF TEXAS

COUNTY OF COLLIN

KNOW ALL MEN BY THESE PRESENTS:

THIS AGREEMENT (herein so called) is made and entered into as of the 5th day of May, 2010, by and between Lender, and Borrower,

### WITNESSETH:

WHEREAS, Borrower executed and delivered to Lender, that promissory note dated **December 5, 2006**, in the original principal sum of **$4,650,000.00** (the "Note") which is currently held by Lender and;

WHEREAS, the Note is secured by a deed of trust lien conveyed in a deed of trust dated **December 5, 2006** recorded under **Document Number 20061207001726380** of the Official Public Records of Collin County, Texas (the "Deed of Trust") covering the real property (the "Property") owned by Borrower, more fully described as follows:

> Being a portion of Lot 2, Block A, of PRESTON CENTER, PHASE I, an Addition to the City of Frisco, Collin County, Texas, according to the Plat thereof recorded in Volume H, Page 404, Map Records, Collin County, Texas, together with an Easement Estate, both tracts being more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes.

WHEREAS, the Note is further secured by certain other security (the "Additional Security") more fully described as follows, to-wit: Loan Agreement (the "Loan Agreement") executed by

Borrower for the benefit of Lender and any subsequent holder of the Note; Tax Escrow Agreement executed by Borrower for the benefit of Lender and any subsequent holder of the Note and; Commercial Guaranty Agreement executed by STEVEN G. SHAFER for the benefit of Lender and any subsequent holder of the Note (the Deed of Trust and Additional Security being collectively referred to as the "Security Documents");

WHEREAS, the Note and Security Documents have previously been modified and amended by: (i) that certain Modification Agreement executed by Borrower dated December 5, 2009 recorded under Document Number 20100303000206620 of the Official Public Records of Collin County, Texas and; (ii) that certain Modification Agreement executed by Borrower dated February 5, 2010 recorded under Document Number 20100419000375370 of the Official Public Records of Collin County, Texas; and

WHEREAS, the Note presently matures on **May 5, 2010**, and Borrower has requested and Lender has agreed to amend and modify the Note and Security Documents.

NOW THEREFORE, in consideration of the sum of Ten and No/100 Dollars ($10.00) and the exchange of other good and valuable consideration paid by each of the parties to the other, the receipt and sufficiency of which is hereby acknowledged, Lender and Borrower AGREE AS FOLLOWS:

1. **Acknowledgment of Outstanding Balance.** The outstanding principal balance of the Note as of the date hereof is **$4,361,750.30**. No further advances shall be available to be drawn under the Note.

2. **Renewal and Extension of Maturity.** The Note is hereby renewed and the maturity of the Note is hereby extended to **May 15, 2011**.

3. **Amendment to Interest Rate.** The interest rate is hereby modified and amended to read as follows:

Interest shall accrue on the unpaid balance of the Note from time to time outstanding which is not past due, calculated on a 360-day annual basis (the "Rate"), except as otherwise provided herein, as follows:

The lesser of (a) the Loan Rate (hereinafter defined) or (b) the Highest Lawful Rate (hereinafter defined). The term "Loan Rate" shall mean the sum of **one percent (1.00%)** and the Index as hereafter defined. The Loan Rate shall be subject to change daily with changes in the Index.

Any change in either the Loan Rate or the Highest Lawful Rate shall, after Lender gives only such notice as may be required by applicable law or regulation, be effective for purposes of determining the Rate as of the opening of business on the date of any such change.

The Index is The Wall Street Journal Prime Rate which is the highest rate shown as the base rate on corporate loans posted by at least 75% of the nation's 30 largest banks as published daily in the Money Rates Section of the Wall Street Journal.

As of the date hereof, the Lesser of the Loan Rate and the Highest Lawful Rate, as subject to the Interest Rate Floor, is **5.00%**.

The "Highest Lawful Rate" is the maximum lawful rate which may be contracted for, charged, taken, received, or reserved by Lender in accordance with the applicable laws of the State of Texas (or applicable United States federal law to the extent that it permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law), taking into account all charges made in connection with this loan which are treated as interest under applicable law.

If at any time (i) the Loan Rate, (ii) interest on matured unpaid amounts, if applicable, as provided for herein or in any of the other Loan Documents, together with (iii) all fees and charges, if any, contracted for, charged, received, taken or reserved by Lender in connection with the loan evidenced hereby which are treated as interest under applicable law (collectively, the "Charges"), computed over the full term of this Note, exceed the Highest Lawful Rate, the rate of interest payable hereunder, together with all Charges, shall be limited to the Highest Lawful Rate; provided, however, that any subsequent reduction in the Loan Rate shall not cause a reduction of the rate of interest payable hereunder below the Highest Lawful Rate until the total amount of interest earned hereunder, together with all Charges, equals the total amount of interest which would have accrued at the Loan Rate if such interest rate had at all times been in effect. Changes in the Loan Rate resulting from a change in the Index shall be subject to the provisions of this paragraph.

The rate of interest which may be charged under the terms of the Note shall never be less than **five percent (5.00%)** per annum, ("Interest Rate Floor"). If at any time during the terms of the Note, because of this Interest Rate Floor, the actual rate of interest charged on the unpaid principal balance is more than provided elsewhere in the Note, then Borrower understands that at such times, the Interest Rate Floor as established in this paragraph will control over other provisions of the Note.

4.    **Required Payments.** Principal and accrued and unpaid interest on the Note shall be due and payable as follows:

Principal and interest shall be amortized over twenty-five (25) years (the "Amortized Term"). The initial principal and interest payment shall be **$25,498.36**, or more, each, payable on the 15th day of each and every calendar month, beginning **June 15, 2010**, and continuing regularly and monthly thereafter. Annually, monthly installments shall be adjusted to equal the amount necessary to amortize the unpaid principal balance over the remaining portion of the Amortized Term of this Note; interest being calculated on the unpaid principal to the date of each installment paid and the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal. In addition to payments as required herein, Borrower shall pay, as a principal

payment, on the 15th day of each month, an amount equal to the Net Operating Income, as that term is defined in accordance with generally accepted accounting principals (rents and reimbursements less property level expenses for the Property), realized by Borrower in the preceding calendar month, minus payments to Lender on the Note and minus deposits to the tax escrow established by Borrower for the payment of taxes on the Property.

On **May 15, 2011**, all principal and interest then remaining unpaid, shall be then due and payable.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT BORROWER MAY OWN, OR BORROWER WILL HAVE TO FIND A LENDER WHICH MAY BE THE LENDER BORROWER HAS THIS LOAN WITH, WILLING TO LEND BORROWER THE MONEY. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER WILL HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THE SAME LENDER. THIS LENDER WILL CONSIDER AN APPLICATION TO REFINANCE THE BALLOON PAYMENT AT THE TIME PAYMENT IS DUE, ON THE SAME BASIS AS ALL OTHER NEW MORTGAGE LOAN APPLICATIONS.

5.    **Amendment to Loan Agreement.** The Loan Agreement is hereby modified and amended as follows:

(i)    The following subsection is hereby added to Section 7 of the Loan Agreement, which is entitled "Covenants":

(k)    Furnish to Lender monthly operating statements for Borrower by the 30th day of the month, in such detail as Lender shall reasonably require. signed by Borrower;

(ii)    The following section is hereby added to the Loan Agreement:

12.    Extension Option. It is further agreed that Borrower shall have the privilege, while not in default under the terms of the Note or any of the Security Documents, of extending the maturity date of the Note for an additional period of twelve (12) months. As a condition of this extension, Borrower must attain a Debt Service Coverage Ratio, as that term is defined in accordance with generally accepted accounting principals, of not less than 1.35 to 1.0 for the trailing three (3) month period as of February 28, 2011. Borrower shall pay a loan extension fee of Five Thousand and 00/100 Dollars ($5,000.00) for such extension. Borrower shall notify Lender not less than thirty (30) days prior to the maturity date of the Note of Borrower's election to extend the maturity date. Borrower shall execute all documents required

by Lender to extend the maturity date as provided herein and agrees to reimburse Lender for all fees incurred in connection with such extension.

6. **Ratification of Security Documents.** Borrower and Lender further agree that the liens, assignments and security interests created by the Security Documents shall continue and carry forward until the Note and all indebtedness evidenced thereby is paid in full. Borrower further agrees that Lender is the holder of the Note and the Security Documents and that such liens, assignments and security interests are hereby ratified and affirmed as valid and subsisting against the Property, and that this Agreement shall in no manner vitiate, affect or impair the Note or the Security Documents (except as expressly modified in this Agreement), and that such liens, assignments, and security interests shall not in any manner be waived, released, altered or modified until the Note and all other obligations secured by the Security Documents (including any and all subsequent renewals and extensions) have been paid in full.

7. **Release of Claims.** Borrower hereby RELEASES, RELINQUISHES and forever DISCHARGES Lender, its agents, officers, directors, employees and representatives of and from any and all claims, demands, actions and causes of action of any and every kind or character, whether known or unknown, present or future, which Borrower may have against Lender, its agents, officers, directors, employees and representatives arising out of or with respect to any and all transactions relating to the Note and the Security Documents occurring prior to the date hereof.

8. **Miscellaneous.**
(a) Except as modified hereby, all terms and provisions of the Note and Security Documents remain unchanged, are expressly ratified and shall continue in full force and effect, and Borrower acknowledges and affirms Borrower's liability to Lender thereunder. In the event of an inconsistency between this Agreement and the terms of the Note and/or Security Documents, the Note and Security Documents shall govern.
(b) Borrower hereby agrees to pay all costs and expenses incurred by Lender in connection with the execution and administration of this Agreement, the reinstatement and modification of the Note and/or Security Documents, and any other documents executed in connection herewith.
(c) Any default by Borrower in the performance of its obligations herein contained shall constitute a default under the Note and Security Documents, and shall allow Lender to exercise any or all of its remedies set forth in the Note and Security Documents or at law or in equity.
(d) Lender does not, by its execution of this Agreement, waive any rights it may have against any person not a party hereto.
(e) This Agreement may be executed in multiple counterparts, each of which shall constitute an original instrument, but all of which shall constitute one and the same Agreement.
(f) Borrower agrees that this Agreement and all of the covenants and agreements contained herein shall be binding upon the parties hereto and shall inure to the benefit of and be binding upon each of their respective heirs, executors, legal representatives, successors and permitted assigns.

9. **No Oral Agreements.** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

LENDER:

FIRST UNITED BANK AND TRUST COMPANY

BY: William C Rohol
NAME: William C Rohol
TITLE: SVP

BORROWER:

SHAFER PLAZA LII, LTD., a Texas limited partnership

BY: SHAFER PLAZA FIFTY TWO CM, LLC, a Texas limited liability company, General Partner

BY: _____
STEVEN G. SHAFER, Manager

GUARANTOR:

_____
STEVEN G. SHAFER

STATE OF TEXAS

COUNTY OF _____Collin_____

This instrument was acknowledged before me on the __30__ day of June, 2010, by
__William Rohe_____, __Svp_____ of FIRST UNITED
BANK AND TRUST COMPANY, a banking association, on behalf of said banking association.

NATALIE A FRIESENHAHN
NOTARY PUBLIC - TEXAS
MY COMMISSION EXPIRES 12/21/2011

_____Natalie_____
NOTARY PUBLIC - STATE OF TEXAS


STATE OF TEXAS

COUNTY OF __Dallas__

This instrument was acknowledged before me on this __30__ day of June, 2010, by
STEVEN G. SHAFER, Manager of SHAFER PLAZA FIFTY TWO CM, LLC, a Texas limited
liability company, in its capacity as General Partner of SHAFER PLAZA LII, LTD., a Texas limited
partnership, on behalf of said partnership.

Lisa D Fisher
Notary Public
State of Texas
My Comm. Exp. 4-14-2013

_____Lisa D. Fisher_____
NOTARY PUBLIC - STATE OF TEXAS


AFTER RECORDING RETURN TO:

First United Bank and Trust Company
Attention: Loan Administration/Derek Crouse
1400 West Main Street
Durant, Oklahoma 74701

PREPARED IN THE LAW OFFICE OF:

William David Keese, P.C.
1400 West Main Street
Durant, Oklahoma 74701

**EXHIBIT A**

TRACT 1

BEING all that certain lot, tract or parcel of land out of the George McNeil Survey, Abstract No. 608 in the City of Frisco, Collin County, Texas, and being part of the property conveyed to Makolet Venture, Ltd., by deed recorded in County Clerks File Number 20060502000585480 of the Deed Records of Collin County, Texas, and also being a part of Lot 2 in Block A of Preston Center Phase1, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet H, Slide 404 of the Plat Records of Collin County, Texas, and being more particularly being described by metes and bounds as follows:

BEGINNING at a 5/8" iron rod found for the Northeast corner of said Lot 2 in Block A, of Preston Center Phase 1, said point also being the Southeast corner of Lot 1B in Block A of Preston Center Addition, an addition to the City of Frisco, Texas, according to plat thereof recorded in Cabinet I, Slide 454 of the Plat Records of Collin County, Texas;

Thence South 11 degrees 51 minutes 00 seconds West (Basis of Bearings per plat recorded in Cabinet "H", Slide 404 of the Plat Records of Collin County, Texas) along the East line of said Lot 2 in Block A of Preston Center Phase 1, for a distance of 290.00 feet to a 1/2" iron rod found for the Southeast corner of said Lot 2;

Thence North 78 degrees 09 minutes 00 seconds West along the South line of said Lot 2 and being common to a 6.4712 acre tract of land conveyed to Folsom Preston, Ltd., by deed recorded in Volume 4052 at Page 2918 of the Deed Records of Collin County, Texas, for a distance of 258.00 feet to a nail found in concrete for corner;

Thence South 11°51'00" West and continuing along the line of Lot 2 for a distance of 30.00 feet to a nail found in concrete for corner;

Thence North 78°09'00" West and continuing along the South line of said Lot 2 for a distance of 351.00 feet to a 5/8" iron rod set for corner in the East right of way line of Preston Road (State Highway No. 289) as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, said point being South 78°09' East at a distance of 11.00 feet from the Southwest corner of said Lot 2;

THENCE North 11°51'00" East and following the East right of way line of Preston Road as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, for a distance of 9.99 feet to a 5/8" iron rod set for corner, said point being the beginning of a curve to the left having a central angle of 03°03'52" with a radius of 5800.58 feet and a chord bearing North 10°19'34" East at a distance of 310.22 feet;

THENCE Northeasterly along said curve to the left and following the East right of way line of Preston Road as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, for an arc distance of 310.25 feet to a 5/8" iron rod

set for corner, said point being in the North line of said Lot 2 in Block A of Preston Center Phase 1 and being South 78°09'00" East at a distance of 11.00 feet from the Northwest corner of said Lot 2;

THENCE South 78°09'00" East along the North line of said Lot 2 and passing the Southwest corner of the aforesaid mentioned Lot 1B at a distance of 204.82 feet and continuing along the common line of Lot 2 and Lot 1B for a distance of 412.43 feet to the POINT OF BEGINNING AND CONTAINING 4.3163 ACRES OF LAND, more or less.

TRACT 2:

EASEMENT ESTATE created by that certain Easement with Covenants and Restrictions Affecting Land (ECR) by and between FM 720-Preston Ltd., a Texas limited partnership with Stratford Land Investments, Inc., a Texas corporation, as general partner and Brookshire Grocery Company, a Texas corporation, dated 08/13/1992, filed 08/17/1992, recorded under cc# 92-0055264, Real Property Records, Collin County, Texas.

.2006120780 726390     12/07/2006 01:05:30 PM DT  1/16
Loan No. _____

Return to:
Republic Title of Texas, Inc.
2626 Howell Street, 10th Floor
TX 75204

## COMMERCIAL DEED OF TRUST, SECURITY AGREEMENT
## FINANCING STATEMENT AND ASSIGNMENT OF RENTS

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

| | |
|---|---|
| **SHAFER PLAZA LII, LTD.,**<br>a Texas limited partnership | **FIRST UNITED BANK AND TRUST COMPANY** |
| **3001 Knox Street, Suite 207** | **1700 Redbud Boulevard, Suite 130** |
| **Dallas, Texas 75205**<br>(hereafter called "Borrower") | **McKinney, Texas 75069**<br>(hereinafter called "Beneficiary") |

**CONVEYANCE AND GRANT.** For valuable consideration, Borrower conveys to **GREG MASSEY**, Trustee, in trust with power of sale, for the benefit of Beneficiary, the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; and all easements, rights of way, and appurtenances; all water and water rights; and all other rights, royalties, and profits relating to the real property, including without limitation such rights as Borrower may have in all minerals, oil, gas, geothermal and similar matters, located in Collin County, Texas (the "Real Property"):

Being a portion of Lot 2, Block A, of PRESTON CENTER, PHASE I, an Addition to the City of Frisco, Collin County, Texas, according to the Plat thereof recorded in Volume H, Page 404, Map Records, Collin County, Texas, together with an Easement Estate, both tracts being more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes.

*SUBJECT TO* all conditions, covenants, restrictions, reservations and easements that appear of record.

Borrower hereby absolutely assigns to Beneficiary all of Borrower's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Borrower grants Beneficiary a Uniform Commercial Code security interest in the Rents and the Personal Property defined below.

**DEFINITIONS.** The following words shall have the following meanings when used in this Deed of Trust. Terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Texas Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Deed of Trust.** The words "Deed of Trust" mean this Commercial Deed of Trust, Security Agreement, Financing Statement and Assignment of Rents, among Borrower, Beneficiary, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Fixtures.** The word "Fixtures" means all building material, machinery, apparatus, equipment, fittings, fixtures and personal property of every kind and nature whatsoever, now in, part of, affixed to, delivered to or used in connection with the buildings and improvements on the Real Property, or hereafter acquired by the Borrower and

2481455 Mortgage/Deed of Trust PG: 1
1/5/2007, LOT 2, BLK A, PRESTON CEN
Print Date: 04/23/2007 09:26:17

**EXHIBIT**

tabbies*

**2**

hereafter placed in, affixed to, delivered to or used in connection which such buildings and improvements or any buildings hereinafter constructed or placed upon the Real Property or any part thereof, including, but without limiting the generality of the foregoing, all engines, furnaces, boilers, stokers, pumps, heaters, tanks, dynamos, transformers, motors, generators, fans, blowers, vents, switchboards, electrical equipment, heating, plumbing, lifting and ventilating apparatus, air-cooling and air-conditioning apparatus, water, gas and electrical fixtures, elevators, mail conveyors, escalators, drapes, carpets, shades, awnings, screens, radiators, partitions, ducts, shafts, pipes, conduits, lines and facilities of whatsoever nature for air, gas, water, steam, electricity, waste sewage and for other utilities, services and uses, compressors, vacuum cleaning systems, call systems, fire prevention and extinguishing apparatus, kitchen equipment, cafeteria equipment, all of which to the extent permitted by law are hereby understood and agreed to be part and parcel of the Real Property and improvements thereon and appropriated to the use and operation of the Real Property and said improvements, and whether affixed or annexed or not, shall for the purposes of this Deed of Trust be deemed constructively to be real estate and conveyed hereby, excluding, however, readily movable trade fixtures not used or acquired for use in connection with the operation of any such building or any part thereof, readily movable office furniture, furnishings and equipment not so used or acquired for use, and consumable supplies, whether or not affixed or annexed, that have been or that may hereafter be placed in any building constructed upon the Real Property or any part thereof.

**Guarantor.** The word "Guarantor" (individually and/or collectively, as the context may require) means those persons, firms or entities, if any, designated as Guarantor in the Related Documents.

**Guaranty.** The word "Guaranty" (individually and/or collectively, as the context may require) means that or those instruments of guaranty, if any, now or hereafter in effect, from Guarantor to Beneficiary guaranteeing the repayment of all or any part of the Indebtedness.

**Improvements.** The word "Improvements" means and includes without limitation all existing and future improvements, fixtures, buildings, structures, mobile homes affixed on the Real Property, facilities, additions and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means: (a) the Note; (b) all principal and earned interest and other sums required to be paid pursuant to the Note, this Deed of Trust, and any other instruments related thereto; (c) all sums advanced or costs or expenses incurred by Beneficiary (whether by Beneficiary directly or on Beneficiary's behalf by the Trustee) which are made or incurred pursuant to or allowed by the terms of this instrument, plus interest thereon at the same rate as provided in the Note from the date paid until reimbursed; (d) other and additional notes, debts, obligations, and liabilities of any kind and character of Borrower, now and hereafter existing in favor of Beneficiary regardless of whether such notes, debts, obligations, and liabilities be direct or indirect, primary or secondary, joint, several or joint and several, fixed or contingent and regardless of whether such present or future notes, debts, obligations, and liabilities may, prior to their acquisition by Beneficiary, be or have been payable to or be or have been in favor of some other person or have been acquired by Beneficiary in a transaction with one other than Beneficiary, together with any and all renewals and extensions of such notes, debts, obligations, and liabilities, or any part thereof; and (e) all renewals and extensions of the above whether or not Borrower executes any renewal or extension agreement.

**Note.** The word "Note" means the note dated effective **December 5, 2006,** in the principal amount of **Four Million Six Hundred Fifty Thousand and 00/100 Dollars ($4,650,000.00)** from Borrower to Beneficiary, together with all renewals, extensions, modifications, refinancings, and substitutions for the Note.

**Personal Property.** The words "Personal Property" mean all equipment, and other articles of personal property now or hereafter owned by Borrower, and now or hereafter attached or affixed to the Real Property, and such other personal property as may be described in this Deed of Trust; together with all accessions, parts, additions to,

replacements of, and substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Related Documents.** The words "Related Documents" mean and include without limitation all credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, bonuses, production payments, royalties, profits, and other benefits derived from the Property.

THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Beneficiary all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Borrower's obligations under the Indebtedness and this Deed of Trust.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower agrees that Borrower's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Borrower may: (a) remain in possession and control of the Property; (b) use, operate or manage the Property; and (c) collect any Rents from the Property.

**Duty to Maintain.** Borrower shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Hazardous Substances.** The terms "hazardous waste," "hazardous substance," "disposal," "release," and "threatened release," as used in this Deed of Trust, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. Borrower represents and warrants to Beneficiary that: (a) During the period of Borrower's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, or about the Property; (b) Borrower has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Beneficiary in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; (c) Except as previously disclosed to and acknowledged by Beneficiary in writing, (i) neither Borrower nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, or about the Property and (ii) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Borrower authorizes Beneficiary and its agents to enter upon the Property to make such inspections and tests as Beneficiary may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Beneficiary shall be at Borrower's expense, shall be for Beneficiary's purposes only and shall not be construed to create any responsibility or liability on the part of Beneficiary to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste.

Borrower hereby (a) releases and waives any future claims against Beneficiary for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Beneficiary against any and all claims, losses, liabilities, damages, penalties, and expenses which Beneficiary may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Borrower's ownership or interest in the Property, whether or not the same was or should have been known to Borrower. The provisions of this section of the Deed of Trust including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and release of the lien of this Deed of Trust and shall not be affected by Beneficiary's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Borrower shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Specifically without limitation, Borrower will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), soil, gravel or rock products without the prior written consent of Beneficiary. This restriction will not apply to rights and easements (such as gas and oil) not owned by Borrower and of which Borrower has informed Beneficiary in writing prior to Borrower's signing of this Deed of Trust.

**Removal of Improvements.** Borrower shall not demolish or remove any Improvements from the Real Property without the prior written consent of Beneficiary. As a condition to the removal of any Improvements, Beneficiary may require Borrower to make arrangements satisfactory to Beneficiary to replace such Improvements with Improvements of at least equal value.

**Beneficiary's Right to Enter.** Beneficiary and its agents and representatives may enter upon the Real Property at all reasonable times to attend to Beneficiary's interests and to inspect the Property for purposes of Borrower's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Borrower shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Beneficiary in writing prior to doing so and so long as Beneficiary's interests in the Property are not jeopardized. Beneficiary may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Beneficiary, to protect Beneficiary's interest.

**Duty to Protect.** Borrower agrees neither to abandon nor leave unattended the Property. Borrower shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY BENEFICIARY.** Beneficiary may, at its option, declare immediately due and payable all Indebtedness secured by this Deed of Trust upon the sale or transfer, without the Beneficiary's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest therein; whether legal or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of such Real Property interest. Transfer also includes any change in ownership of more than twenty-five percent (25%) of the partnership interests of Borrower, other than a transfer to an entity controlled by Steven G. Shafer, or a transfer occurring as a result of the exercise of a security interest in the partnership interests of Borrower by FREI FRISCO RETAIL, LP. However, this option shall not be exercised by Beneficiary if such exercise is prohibited by Federal law or by Texas Law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are a part of this Deed of Trust:

**Payment.** Borrower shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Borrower shall maintain the Property free of all liens having priority over or equal to the interest of Beneficiary under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Borrower may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Beneficiary's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Borrower shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Borrower has notice of the filing, secure the discharge of the lien, or if requested by Beneficiary, deposit with Beneficiary, cash or a sufficient corporate surety bond or other security satisfactory to Beneficiary in an amount sufficient to discharge the lien plus any costs and attorneys' fees or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Borrower shall defend itself and Beneficiary and shall satisfy any adverse judgment before enforcement against the Property. Borrower shall name Beneficiary as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Borrower shall upon demand furnish to Beneficiary satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Beneficiary at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Borrower shall notify Beneficiary at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Borrower will upon request of Beneficiary furnish to Beneficiary advance assurances satisfactory to Beneficiary that Borrower can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust:

**Maintenance of Insurance.** Borrower shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property and all Personal Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Beneficiary, together with such other insurance, including but not limited to hazard, liability, business interruption, and boiler insurance, as Beneficiary may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Beneficiary. BORROWER MAY FURNISH THE REQUIRED INSURANCE WHETHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY BORROWER OR THROUGH EQUIVALENT INSURANCE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN THE STATE OF TEXAS. If Borrower fails to provide any required insurance or fails to continue such insurance in force, Beneficiary may, but shall not be required to, do so at Borrower's expense, and the cost of the insurance will be added to the Indebtedness. If any such insurance is procured by Beneficiary at a rate or charge not fixed or approved by the State Board of Insurance, Borrower will be so notified, and Borrower will have the option for five (5) days of furnishing equivalent insurance through any insurer authorized to transact business in Texas. Borrower, upon request of Beneficiary, will deliver to Beneficiary from time to time the policies or certificates of insurance in form satisfactory to Beneficiary, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Beneficiary.

**Application of Proceeds.** Borrower shall promptly notify Beneficiary of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Beneficiary may make proof of loss if Borrower fails to do so within fifteen (15) days of the casualty. Whether or not Beneficiary's security is impaired, Beneficiary may, at its election, apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Beneficiary elects to apply the proceeds to restoration and repair, Borrower shall repair or replace the damaged or destroyed Property in a manner satisfactory to Beneficiary. Beneficiary shall, upon satisfactory proof of such expenditure, pay or reimburse Borrower from the proceeds for the reasonable cost of repair or restoration if Borrower is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Beneficiary has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Beneficiary under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Beneficiary holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Borrower as Borrower's interests may appear.

**Unexpired Insurance at Sale.** Any unexpired insurance shall inure to the benefit of, and pass to, the purchaser of the Property covered by this Deed of Trust at any trustee's sale or other sale held under the provisions of this Deed of Trust, or at any foreclosure sale of such Property.

**Borrower's Report on Insurance.** Upon request of Beneficiary, however not more than once a year, Borrower shall furnish to Beneficiary a report on each existing policy of insurance showing: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured, the then current replacement value of such property, and the manner of determining that value; and (e) the expiration date of the policy. Borrower shall, upon request of Beneficiary, have an independent appraiser satisfactory to Beneficiary determine the cash value replacement cost of the Property.

**ESCROW FOR TAXES AND INSURANCE.** Following the occurrence of an Event of Default, and at the request of Beneficiary, Borrower shall create a fund or reserve for the payment of all insurance premiums, taxes, and assessments against the Property by paying to Beneficiary contemporaneously with each installment of principal and interest on the note a sum equal to the premiums that will next become due and payable on the hazard insurance policies covering the Property, or any part thereof, plus taxes and assessments next due on the Property or any part thereof, as estimated by Beneficiary, less all sums paid previously to Beneficiary, divided by the number of months to elapse before one month prior to the date when such premiums, taxes, and assessments will become delinquent, such sums to be held by Beneficiary without interest, for the purpose of paying such premiums, taxes, and assessments. Any excess reserve shall, at the discretion of Beneficiary therefor, be credited by Beneficiary on subsequent payments to be made on the Indebtedness, and any deficiency shall be paid by Borrower to Beneficiary on or before the date when such premiums, taxes, and assessments shall become delinquent. Transfer of legal title to the Property shall automatically transfer to the transferee title in all sums deposited under the provisions of this Section.

**FINANCIAL STATEMENTS.** Borrower and each Guarantor of the Indebtedness, shall furnish to Beneficiary on an annual basis, balance sheets, income and cash flow statements and federal income tax returns in such form and detail as Beneficiary shall require.

**APPRAISALS.** Borrower shall furnish to Beneficiary, upon request, such appraisals of the Property as may be required of Beneficiary under applicable State or Federal laws and regulations issued pursuant thereto.

**ANNUAL REPORTS.** Borrower shall furnish to Beneficiary, upon request, a certified statement of Net Operating Income received from the Property during Borrower's previous fiscal year in such form and detail as Beneficiary shall require. "Net Operating Income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operations of the Property.

**EXPENDITURES BY BENEFICIARY.** If Borrower fails to comply with any provision of this Deed of Trust, or if any action or proceeding is commenced that would materially affect Beneficiary's interests in the Property, Beneficiary on Borrower's behalf may, but shall not be required to, take any action that Beneficiary deems appropriate. Any amount that Beneficiary expends in so doing will bear interest at the Note rate from the date incurred or paid by Beneficiary to the date of repayment by Borrower. All such expenses, at Beneficiary's option, will: (a) be payable on demand; (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note; or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Deed of Trust also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Beneficiary may be entitled on account of the default. Any such action by Beneficiary shall not be construed as curing the default so as to bar Beneficiary from any remedy that it otherwise would have had.

**WARRANTY: DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Borrower warrants that: (a) Borrower holds good and indefeasible title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth herein or in any title insurance policy, title report, or attorney's opinion issued in favor of, and accepted by Beneficiary in connection with this Deed of Trust; and (b) Borrower has the full right, power, and authority to execute and deliver this Deed of Trust to Beneficiary.

**Defense of Title.** Subject to the exception in the paragraph above, Borrower warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Borrower's title or the interest of Trustee or Beneficiary under this Deed of Trust, Borrower shall defend the action at Borrower's expense. Borrower may be the nominal party in such proceeding, but Beneficiary shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Beneficiary's own choice, and Borrower will deliver, or cause to be delivered, to Beneficiary such instruments as Beneficiary may request from time to time to permit such participation.

**Compliance with Laws.** Borrower warrants that the Property and Borrower's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**CONDEMNATION.** The following provisions relating to proceedings in condemnation are a part of this Deed of Trust:

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Beneficiary may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees necessarily paid or incurred by Borrower, Trustee or Beneficiary in connection with the condemnation.

**Proceedings.** If any proceeding in condemnation is filed, Borrower shall promptly notify Beneficiary in writing, and Borrower shall promptly take such steps as may be necessary to defend the action and obtain the award. Borrower may be the nominal party in such proceeding, but Beneficiary shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Borrower will deliver or cause to be delivered to Beneficiary such instruments as may be requested by it from time to time to permit such participation.

**ASSIGNMENT OF RENTS.** As additional security for the payment of the Indebtedness, Borrower hereby absolutely assigns to Beneficiary all Rents as defined above. Until the occurrence of an Event of Default, Borrower is granted a license to collect and retain the Rents; however, upon receipt from Beneficiary of a notice that an Event of Default exists under this Deed of Trust, Beneficiary may terminate Borrower's license, and then Beneficiary, as Borrower's agent, may collect the Rents. In addition, if the Property is vacant, Beneficiary may rent or lease the Property. Beneficiary shall not be liable for its failure to rent the Property, to collect any rents, or to exercise diligence in any matter relating to the Rents; Beneficiary shall be accountable only for Rents actually received. Beneficiary neither has nor assumes any obligation as lessor or landlord with respect to any occupant of the Property. Rents so received shall be applied by Beneficiary first to the remaining unpaid balance of the Indebtedness, in such order or manner as Beneficiary shall elect, and the residue, if any, shall be paid to the person or persons legally entitled to the residue.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures or other personal property, and Beneficiary shall have all of the rights of a secured party under the Texas Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Beneficiary, Borrower shall execute financing statements and take whatever other action is requested by Beneficiary to perfect and continue Beneficiary's security interest in the Property. In addition to recording this Deed of Trust in the real property records, Beneficiary may, at any time and without further authorization from Borrower, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Borrower shall reimburse Beneficiary for all expenses incurred in perfecting or continuing this security interest. Upon default, Borrower shall assemble the Personal Property in a manner and at a place reasonably convenient to Borrower and Beneficiary and make it available to Beneficiary within three (3) days after receipt of written demand from Beneficiary.

**Addresses.** The mailing addresses of Borrower (debtor) and Beneficiary (secured party), from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Texas Uniform Commercial Code), are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Beneficiary, Borrower will make, execute and deliver, or will cause to be made, executed or delivered, to Beneficiary or to Beneficiary's designee, and when requested by Beneficiary, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Beneficiary may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Beneficiary, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve: (a) the obligations of Borrower under the Note, this Deed of Trust, and the Related Documents; and (b) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Borrower. Unless prohibited by law or agreed to the contrary by Beneficiary in writing, Borrower shall reimburse Beneficiary for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Borrower fails to do any of the things referred to in the preceding paragraph, Beneficiary may do so for and in the name of Borrower and at Borrower's expense. For such purposes, Borrower hereby irrevocably appoints Beneficiary as Borrower's attorney-in-fact for the purpose of making, executing, delivering, filing,

recording, and doing all other things as may be necessary or desirable, in Beneficiary's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Borrower under this Deed of Trust, Beneficiary shall execute and deliver to Borrower a release of this Deed of Trust lien and suitable statements of termination of any financing statement on file evidencing Beneficiary's security interest in the Rents and the Personal Property. Reasonable costs for preparation of such release and statements of termination together with any filing fees required by law shall be paid by Borrower, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following events shall constitute a Default.

**Default.** Default in the timely payment of any installment of principal and interest of the Indebtedness or in the performance of any covenant or provision of any Related Document.

**Insolvency.** Borrower, or any Guarantor, shall: (a) execute an assignment for the benefit of creditors or take any action in furtherance thereof; or (b) admit in writing his inability to pay his debts generally as they become due; or (c) as a debtor, file a petition, case, proceeding, or other action pursuant to, or voluntarily seek the benefit or benefits of any debtor relief law or take any action in furtherance thereof; or (d) seek, acquiesce in, or suffer the appointment of a receiver, trustee, or custodian of Borrower, any Guarantor, the Property, in whole or in part, or any significant portion of other property belonging to Borrower or any Guarantor that affects performance of the Indebtedness; or (e) voluntarily become a party to any proceeding seeking to effect a suspension or having the effect of suspending any of the rights of Beneficiary granted or referred to in the Related Documents or take any action in furtherance thereof.

**Bankruptcy.** The filing of a petition, case, proceeding, or other action against Borrower, or any Guarantor, as a debtor under any debtor relief law; or seeking appointment of a receiver, trustee, or custodian of Borrower, or any Guarantor, or of any property described in the Related Documents or any part thereof, or of any significant portion of other property belonging to Borrower or any Guarantor, that affects its ability to perform under the Indebtedness, or seeking to effect a suspension or having the effect of suspending any of the rights of Beneficiary granted or referred to in the Related Documents, and: (a) Borrower or any Guarantor admits, acquiesces in, or fails to contest the material allegations thereof; or (b) the petition, case, proceeding, or other action results in entry of an order for relief or order granting the relief sought against Borrower or any Guarantor; or (c) the petition, case, proceeding, or other action is not permanently dismissed on or before the earliest of trial thereon or sixty (60) days next following the date of its filing.

**Breaches.** The discovery by Beneficiary that any warranty, covenant, or representation made to Beneficiary by or on behalf of Borrower or any Guarantor is false, misleading, erroneous, or breached in any material respect.

A Default shall not be an Event of Default if the Default is cured within ten (10) days for a monetary default and thirty (30) days for a non-monetary default, following the delivery of or the mailing of written notice from Beneficiary to Borrower's most current address as reflected in Beneficiary's business records specifying the existence of any such Default. If such Default is not cured within the applicable ten (10) day or thirty (30) day period, the Default shall be an Event of Default without need of any further notice or action by Beneficiary.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default, and after giving any required statutory notice of default, including any notice required under the Texas Property Code, at any time thereafter, Trustee or Beneficiary, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Beneficiary may declare the unpaid principal balance of the Indebtedness due and payable. In no event will Borrower be required to pay any unearned interest.

**Foreclosure.** If Beneficiary invokes the power of sale, Trustee, at the request of Beneficiary, may sell all or any portion of the Property at public auction to the highest bidder for cash at the location within the courthouse designated by the County Commissioners Court, or if no such area has been designated, at the area designated in the notice of sale within the courthouse, between the hours of 10:00 A.M. and 4:00 P.M. on the first Tuesday of any month, after the Beneficiary or its agent has given notice of the time, place, and terms of sale and of the property to be sold as required by the Texas Property Code, as then amended.

**UCC Remedies.** With respect to all or any part of the Personal Property, Beneficiary shall have all the rights and remedies of a secured party under the Texas Uniform Commercial Code.

**Trustee's Powers.** Borrower hereby jointly and severally authorizes and empowers Trustee to sell all or any portion of the Property together or in lots or parcels, as Trustee may deem expedient, and to execute and deliver to the purchaser or purchasers of such Property good and sufficient deeds of conveyance of fee simple title, or of lesser estates, and bills of sale and assignments, with covenants of general warranty made on behalf of Borrower. In no event shall Trustee be required to exhibit, present or display at any such sale any of the Property to be sold at such sale. The Trustee making such sale shall receive the proceeds of the sale and shall apply the same as provided below. Payment of the purchase price to Trustee shall satisfy the liability of the purchaser at any such sale of the Property, and such person shall not be bound to look after the application of the proceeds.

**Appoint Receiver.** Beneficiary shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Beneficiary's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Beneficiary shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Borrower remains in possession of the Property after the Property is sold as provided above or Beneficiary otherwise becomes entitled to possession of the Property upon default of Borrower, Borrower shall become a tenant at sufferance of Beneficiary or the purchaser of the Property and shall, at Beneficiary's option, either: (a) pay a reasonable rental for the use of the Property; (b) vacate the Property immediately upon the demand of Beneficiary; or (c) if such tenants refuse to surrender possession of the Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Borrower expressly waives all damages sustained by reason thereof.

**Sale of the Property.** To the extent permitted by applicable law, Borrower hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Beneficiary shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Beneficiary shall be entitled to bid at any public sale on all or any portion of the Property. Trustee may convey all or any part of the Property to the highest bidder for cash with a general warranty binding Borrower, subject to prior liens and to other exceptions to the conveyance and warranty. Borrower waives all requirements of appraisement, if any. The affidavit of any person having knowledge of the facts to the effect that proper notice as required by the Texas Property Code was given shall be prima facie evidence of the fact that such notice was in fact given. Recitals and statements of fact in any notice or in any conveyance to the purchaser or purchasers of the Property in any foreclosure sale under this Deed of Trust shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed. Any sale under the powers

granted by this Deed of Trust shall be a perpetual bar against Borrower, Borrower's heirs, successors, assigns and legal representatives.

**Proceeds.** Trustee shall pay the proceeds of any sale of the Property: (a) first, to the expenses of foreclosure, including reasonable fees or charges paid to the Trustee, including but not limited to fees for enforcing the lien, posting for sale, selling, or releasing the Property; (b) then to Beneficiary the full amount of the Indebtedness; (c) then to any amount required by law to be paid before payment to Borrower; and (d) the balance, if any, to Borrower.

**Waiver; Election of Remedies.** A waiver by any party of a breach of a provision of this Deed of Trust shall not constitute a waiver of or prejudice that party's rights otherwise to demand strict compliance with that provision or any other provision. Election by Beneficiary to pursue any remedy provided in this Deed of Trust, the Indebtedness, in any Related Document, or provided by law shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under this Deed of Trust after failure of Borrower to perform shall not affect Beneficiary's right to declare a default and to exercise any of its remedies. To the extent permitted by law, Borrower waives any rights which Borrower might otherwise have under the provisions of Sections 51.003, 51.004 and 51.005 of the Texas Property Code.

**Jury Trial Waiver.** In recognition of the higher costs and delay which may result from a jury trial, the parties waive any right to trial by jury of any claim, demand, action or cause of action (a) arising hereunder, or (b) in any way connected with or related or incidental to the dealings of the parties hereto or any of them with respect hereto, in each case whether now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and each party further waives any right to consolidate any such action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived; and each party hereby agrees and consents that any such claim, demand, action or cause of action shall be decided by court trial without a jury, and that any party hereto may file an original counterpart or a copy of this section with any court as written evidence of this consent of the parties hereto to the waiver of their right to trial by jury.

**Attorneys' Fees; Expenses.** If Beneficiary institutes any suit or action to enforce any of the terms of this Deed of Trust, Beneficiary shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Beneficiary which in Beneficiary's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness, be payable on demand and shall bear interest at the Note rate from the date of expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Beneficiary's reasonable attorneys' fees whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, environmental assessments, appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Borrower will also pay any court costs, in addition to all other sums provided by law. In the event of foreclosure of this Deed of Trust, Beneficiary shall be entitled to recover from Borrower Beneficiary's reasonable attorneys' fees and actual disbursements necessarily incurred by Beneficiary in pursuing such foreclosure.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Beneficiary and Borrower: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Beneficiary under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other lienholder of the Property of the commencement of a foreclosure proceeding or of the commencement of any other action to which Beneficiary may avail itself as a remedy, except to the extent required by applicable law or by written agreement.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Beneficiary shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Substitute Trustee.** Beneficiary, at its option, from time to time, and more than once, may appoint in writing a successor or substitute trustee, with or without cause, including the resignation, absence, death, inability, refusal or failure to act of the Trustee. The successor or substitute trustee may be appointed without ever requiring the resignation of the former trustee and without any formality except for the execution and acknowledgment of the appointment by the Beneficiary of this Deed of Trust. The successor or substitute trustee shall then succeed to all rights, obligations, and duties of the Trustee. This appointment may be made on behalf of Beneficiary by the President, any Vice President, Secretary, or Cashier of Beneficiary.

**NOTICES TO BORROWER AND OTHER PARTIES.** Any notice under this Deed of Trust shall be in writing and shall be effective when actually delivered or, if mailed, shall be deemed effective when deposited in the United States mail first class, certified mail, postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Beneficiary and Trustee informed at all times of Borrower's current address.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Deed of Trust has been delivered to Beneficiary and accepted by Beneficiary in the State of Texas. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of Texas and applicable Federal laws.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Limitation of Interest.** All agreements between Borrower and Beneficiary are expressly limited so that in no contingency or event whatsoever whether by reason of advancement of the proceeds of the Indebtedness, acceleration of maturity of the Indebtedness hereof, or otherwise, shall the amount paid or agreed to be paid to the Beneficiary for the use, forbearance, or detention of the money to be advanced hereunder exceed the highest rate permissible under the laws of the State of Texas and of the United States, and in particular the Texas Finance Code, as amended (to the extent not preempted by Federal law, if any) and any subsequent revisions repeals, or judicial interpretations thereof, to the extent any of same are applicable hereto and thereto. If, from any circumstance whatsoever, fulfillment of any provisions hereof or of the Indebtedness or any other agreement referred to herein or therein shall, at the time fulfillment of such provision be due, involve transcending the limit of validity prescribed by law that a court of competent jurisdiction may deem applicable hereto, then ipso facto the obligations to be fulfilled shall be reduced to the limit of such validity, and if from any circumstance the Beneficiary shall ever receive as interest an amount which would be excessive interest, it shall: (a) be applied to the reduction of the

unpaid principal balance of the Indebtedness; or (b) be refunded to Borrower and not to the payment of interest. It is further agreed, without limitation of the foregoing, that all calculations of the rate of interest contracted for, charged, or received on the Indebtedness evidenced or secured hereby that are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by applicable law, by amortizing, prorating, allocating, and spreading throughout the full stated term of the Indebtedness so that such rate of interest on account of such Indebtedness, as so calculated, is uniform throughout the term thereof. This provision shall control every other provision of all agreements between Borrower and the Beneficiary.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Beneficiary in any capacity, without the written consent of Beneficiary.

**Multiple Parties.** All obligations of Borrower under this Deed of Trust shall be joint and several, and all references to Borrower shall mean each and every Borrower. This means that each of the persons signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties are corporations or partnerships, it is not necessary for Beneficiary to inquire into the powers of any of the parties or of the officers, directors, partners, or agents acting or purporting to act on their behalf.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provisions shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Deed of Trust in all other respects shall remain valid and enforceable.

**Successors and Assigns.** Subject to the limitations stated in this Deed of Trust on transfer of Borrower's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Borrower, Beneficiary, without notice to Borrower, may deal with Borrower's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waivers and Consents.** Beneficiary shall not be deemed to have waived any rights under this Deed of Trust (or under the Related Documents) unless such waiver is in writing and signed by Beneficiary. No delay or omission on the part of Beneficiary in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Deed of Trust shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Beneficiary, nor any course of dealing between Beneficiary and Borrower, shall constitute a waiver of any of Beneficiary's rights or any of Borrower's obligations as to any future transactions. Whenever consent by Beneficiary is required in this Deed of Trust, the granting of such consent by Beneficiary in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

## SPECIAL PROVISIONS:

The Note hereby secured is given for the purpose of constructing improvements on the Property, subject to the terms and conditions of the Construction Loan Agreement of even date herewith. This is a "Construction Mortgage" within the meaning of Sections 9.334(h) of the Texas Business and Commerce Code.

**Vendor's Lien.** The Note hereby secured represents funds advanced by Beneficiary at the special instance and request of Borrower and used in payment of the purchase price of the hereinabove described property, and Borrower hereby expressly confess, recognize and acknowledge a Vendor's Lien on said property as security therefore.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND BORROWER AGREES TO ITS TERMS.

EFFECTIVE the 5th day of December, 2006.

BORROWER:

SHAFER PLAZA LII, LTD., a Texas limited partnership

BY: SHAFER PLAZA FIFTY TWO CM, LLC, a Texas
limited liability company, General Partner

BY: _____
STEVEN G. SHAFER, Manager

STATE OF TEXAS

COUNTY OF _Dallas_

This instrument was acknowledged before me on this _5th_ day of December, 2006, by STEVEN G. SHAFER, Manager of SHAFER PLAZA FIFTY TWO CM, LLC, a Texas limited liability company, in its capacity as General Partner of SHAFER PLAZA LII, LTD., a Texas limited partnership, on behalf of said partnership.



**ELLEN GRANT**
Notary Public, State of Texas
My Commission Expires
APRIL 12, 2007

_____
NOTARY PUBLIC - STATE OF TEXAS

AFTER RECORDING RETURN TO:

First United Bank and Trust Company
Attention: Loan Administration/Derek Crouse
1400 West Main Street
Durant, Oklahoma 74701

PREPARED IN THE LAW OFFICE OF:

William David Keese, P.C.
1400 West Main Street
Durant, Oklahoma 74701

## EXHIBIT A

TRACT 1

BEING all that certain lot, tract or parcel of land out of the George McNeil Survey, Abstract No. 608 in the City of Frisco, Collin County, Texas, and being part of the property conveyed to Makolet Venture, Ltd., by deed recorded in County Clerks File Number 20060502000585480 of the Deed Records of Collin County, Texas, and also being a part of Lot 2 in Block A of Preston Center Phase1, an addition to the City of Frisco, Texas, according to the plat thereof recorded in Cabinet H, Slide 404 of the Plat Records of Collin County, Texas, and being more particularly being described by metes and bounds as follows:

BEGINNING at a 5/8" iron rod found for the Northeast corner of said Lot 2 in Block A, of Preston Center Phase 1, said point also being the Southeast corner of Lot 1B in Block A of Preston Center Addition, an addition to the City of Frisco, Texas, according to plat thereof recorded in Cabinet I, Slide 454 of the Plat Records of Collin County, Texas;

Thence South 11 degrees 51 minutes 00 seconds West (Basis of Bearings per plat recorded in Cabinet "H", Slide 404 of the Plat Records of Collin County, Texas) along the East line of said Lot 2 in Block A of Preston Center Phase 1, for a distance of 290.00 feet to a 1/2" iron rod found for the Southeast corner of said Lot 2;

Thence North 78 degrees 09 minutes 00 seconds West along the South line of said Lot 2 and being common to a 6.4712 acre tract of land conveyed to Folsom Preston, Ltd., by deed recorded in Volume 4052 at Page 2918 of the Deed Records of Collin County, Texas, for a distance of 258.00 feet to a nail found in concrete for corner;

Thence South 11°51'00" West and continuing along the line of Lot 2 for a distance of 30.00 feet to a nail found in concrete for corner;

Thence North 78°09'00" West and continuing along the South line of said Lot 2 for a distance of 351.00 feet to a 5/8" iron rod set for corner in the East right of way line of Preston Road (State Highway No. 289) as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, said point being South 78°09' East at a distance of 11.00 feet from the Southwest corner of said Lot 2;

THENCE North 11°51'00" East and following the East right of way line of Preston Road as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, for a distance of 9.99 feet to a 5/8" iron rod set for corner, said point being the beginning of a curve to the left having a central angle of 03°03'52" with a radius of 5800.58 feet and a chord bearing North 10°19'34" East at a distance of 310.22 feet;

THENCE Northeasterly along said curve to the left and following the East right of way line of Preston Road as established by deed to the State of Texas recorded in Volume 4323 at Page 4448 of the Deed Records of Collin County, Texas, for an arc distance of 310.25 feet to a 5/8" iron rod

set for corner, said point being in the North line of said Lot 2 in Block A of Preston Center Phase 1 and being South 78°09'00" East at a distance of 11.00 feet from the Northwest corner of said Lot 2;

THENCE South 78°09'00" East along the North line of said Lot 2 and passing the Southwest corner of the aforesaid mentioned Lot 1B at a distance of 204.82 feet and continuing along the common line of Lot 2 and Lot 1B for a distance of 412.43 feet to the POINT OF BEGINNING AND CONTAINING 4.3163 ACRES OF LAND, more or less.

TRACT 2:

EASEMENT ESTATE created by that certain Easement with Covenants and Restrictions Affecting Land (ECR) by and between FM 720-Preston Ltd., a Texas limited partnership with Stratford Land Investments, Inc., a Texas corporation, as general partner and Brookshire Grocery Company, a Texas corporation, dated 08/13/1992, filed 08/17/1992, recorded under cc# 92-0055264, Real Property Records, Collin County, Texas.

Filed and Recorded
Official Public Records
Brenda Taylor, County Clerk
Collin County, TEXAS
12/07/2006 01:05:30 PM
$76.00 BPETERSON
2006120700172630B

