Eric A. Liepins
ERIC A. LIEPINS, P.C.
12770 Coit Road
Suite 1100
Dallas, Texas 75251
Ph. (972) 991-5591
Fax (972) 991-5788

ATTORNEYS FOR DEBTOR

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SHAFER PLAZA LII,LTD | § | CASE NO. 10-43479-11 |
| | § | |
| | § | |
| DEBTOR | § | |

DISCLOSURE STATEMENT OF SHAFER PLAZA LII, LTD, PURSUANT TO SECTION
1125 OF THE BANKRUPTCY CODE DATED DECEMBER 28, 2010

**TO:    ALL PARTIES-IN-INTEREST, THEIR ATTORNEYS OF RECORD AND TO THE
HONORABLE UNITED STATES BANKRUPTCY JUDGE:**
I
**INTRODUCTION**

**Identity of the Debtors**

Shafer Plaza LII, Ltd., ( "Debtor") filed a voluntary  Chapter 11 case in the United States Bankruptcy Court for the Eastern District of Texas, Sherman  Division ("Court") on October 4, 2010.  Debtor owns a commercial property located in Frisco Texas  (the "Property"). The property in under a long term lease and generates substantial income to the Debtor.   Debtor purpose to restructure the current indebtedness to pay all creditors of the Debtor.

**Purpose of Disclosure Statement; Source of Information**

Debtor submits this Disclosure Statement ("Disclosure Statement") pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Reorganization dated December 28, 2010 ("Plan").  This

Disclosure Statement describes the operations of the Debtor contemplated under the Plan. You are urged to study the Plan in full and to consult with your counsel about the Plan and its impact upon your legal rights. Any accounting information contained herein has been provided by the Debtor.

## Explanation of Chapter 11

Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

## Explanation of the Process of Confirmation

Even if all Classes of Claims accept the Plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally requires that the value to be distributed to Claimants may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

Confirmation of the plan discharges the debtors from all of their pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtors and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.

## Voting Procedures

**Unimpaired Class**.  **Claimants** in Class 1 through 6 are not impaired under the Plan.  Such Class is deemed to have accepted the Plan.

**Impaired Classes**.  The Class 2 through 5 Claimants are impaired as defined by Section 1124 of the Code.  The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2 through 5.  Each holder of an Allowed Claim in Classes 2 through 5 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.

For all Classes, the ballot must be returned to Eric A. Liepins, 12770 Coit Road, Suite 1100, Dallas, Texas  75251.  In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.
.

## Best Interests of Creditors Test

Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code.  If Section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Bankruptcy Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed Plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation.  It is anticipated that in a Chapter 7 liquidation, the Debtor's creditors, other than the secured creditors, would receive less than is provided for in this Plan.  Accordingly, since the Plan proposes a substantial dividend to all creditors, such creditors are receiving more than they would receive in a Chapter 7 liquidation.  Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## Cramdown

The Court may confirm the Plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

## II
## REPRESENTATIONS

[Note:  Paragraphs in brackets to be included after the Bankruptcy Court approves this Disclosure Statement.]

[This Disclosure Statement is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of Reorganization, as amended or modified.  The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.  A copy of the Plan is attached hereto as Exhibit "A".]

[After a hearing on notice, the Court approved this Disclosure Statement as containing information of the kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes being solicited to make an informed judgment about the Plan.]

The information contained in this Disclosure Statement has been derived from the Debtors, unless specifically stated to be from other sources.

NO REPRESENTATIONS CONCERNING DEBTOR ARE  AUTHORIZED BY DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR DEBTORS WHO SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE FEDERAL SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.  IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, DEBTOR  IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO

ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.  THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR AND INTEREST HOLDER IS URGED TO CAREFULLY REVIEW THE PLAN PRIOR TO VOTING ON IT.

### III

### FINANCIAL PICTURE OF THE DEBTORS

### Financial History and Background of the Debtor

The Debtor owns a piece of commercial property located in Frisco Texas. The property is currently the home of an antique mall. The property is under a lease agreement with Frisco Mercantile. The property currently has approximately 10,000 square feet of space available to lease. Frisco mericle has expressed and interest in leasing the balance of the propert y and those discussions are ongoing.  The tenant current on its lease payments.

### Post petition operations and Major Events

Sine the filing of the Bankruptcy the Debtor has been working to develop a Plan of Reorganization. Immediately upon the filing of the case Debtor's secured creditor, First United Bank ("First"), filed a Motion for Relief from Automatic Stay. On December 16, 2010 the Bankruptcy Court entered an Order requiring the Debtor to make certain monthly payments to First.

### Future Income and Expenses Under the Plan

Under the Debtor's Plan, the Debtor will continue in operations and will use the rents to pay creditors claims.

# IV.

## ANALYSIS AND VALUATION OF PROPERTY

The Debtor owns real property in Frisco Texas. The property has a commercial building which is operating an antique mall at the location. The Debtor believes the property has a fair market value of $5,200,000, however a forced sale would yield less. The Debtor owns no other property.

# V.
## SUMMARY OF PLAN OF REORGANIZATION

The Reorganized Debtor will continue in business. The Plan will break the existing claims into 4 categories of Claimants. These claimants will receive cash payments on the Effective Date.

**Satisfaction of Claims and Debts**:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Articles V and VI of this Plan shall be the sole an exclusive means for full settlement, release and discharge of their respective Claims, Debts, or interests.   On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan.

**Class 1 Claimants** (Allowed Administrative Claims of Professionals and US Trustee) are unimpaired and will be paid in cash and in full on the Effective Date of this Plan. Professional fees are subject to approval by the Court as reasonable. Debtor's attorney's fees approved by the Court and payable to the law firm of Eric A. Liepins, P.C.  will be paid immediately following the later of Confirmation or approval by the Court out of the available cash. To the extent approved by the Court, Debtor will pay the balance of the allowed fees and expenses of the counsel for the Debtor over the retainer of $5,000 received by counsel for the Debtor. Debtor does not expect these total fees to exceed $10,000.  This case will not be closed until all allowed Administrative Claims are paid in full.  Section 1930 fees shall be paid in full prior to the Effective Date. Debtor will make quarterly payments to the U.S. Trustee and maybe required to file post-confirmation operating reports until this case is closed.  The Class 1 Claimants are not impaired under this Plan.

**Class 2 Claimants** (Allowed Tax Creditor Claims) are impaired and shall be satisfied as follows:  The Allowed Amount of all Tax Creditor Claims shall be paid out of the rental proceeds. The City of Frisco has filed a Proof of Claim in the amount of $139,321.51[1], Collin County has filed a proof of Claim in the amount of $11,931 and Frisco ISD has filed a Proof of claim in the amount of $51,111.. The taxing authorities will be entitled to receive post-petition pre-confirmation interest on their claims at the statutory rate of 1% per month.  The Taxing Authorities shall retain their liens, if any, to secure their Tax Claims until paid in full as called for by this Plan.  The Class 2 Claimants are not impaired under this Plan.

---

[1]The Debtor believes this to be an error and the actual tax to be $13,900.

**Class 3 Claimants** (Allowed Secured Claim of First United Bank) is impaired and shall be satisfied as follows: The Debtor entered into a Promissory Note dated December 5, 2006 in favor of First in the original amount of $4,650,00. ("Note"). The Note was secured by that certain Deed of Trust also dated December 5, 2006 providing Lender with a first lien position on real property in Frisco, Texas. The Debtor believes the current indebtedness to First to be $4,405,740. The Debtor shall pay the First in full with interest at the rate of the Wall Street Journal Prime Rate plus 1% per annum commencing on the Effective Date. The new First payment shall be based upon a 25 year amortization and shall be paid in 119 monthly installments of $23,867.57 with all remaining principle and interest due on the 120th payment. The Lender shall maintain its lien on the property until paid in full under this Plan. The Class 3 Claimant is impaired under the Plan.

**Class 4 Claimants** (Non-Insider Unsecured Creditors) are impaired under the Plan and shall be satisfied as follows: The Allowed Claims of Unsecured Creditors shall be pro -rata from 60 equal payments of $1,000 commencing on the Effective Date. The Class 4 Claimants are impaired under this Plan.

**Class 5 Claimants** (Insider Unsecured Creditors) are impaired and shall receive no payments under the Plan. Class 5 Claimants are impaired under this Plan.

**Class 6 Claimants** (Current Ownership) is not impaired under the Plan and shall be satisfied by retaining their interest in the Debtor. The Class 6 Claimant is not impaired by the Plan.


ARTICLE VI
**MECHANICS/IMPLEMENTATION OF PLAN**

Debtor shall continue to rent the property to Frisco Mercantile under the current lease. Pursuant to the current lease the debtor collects $21,000 per month, however, the lease has escalations beginning in 2011 and the Debtor anticipated it will be able to lease the remaining footage for at least $10 per square foot no later than March 2011.

As specified in Section 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of this Plan and/or that participate in the offer, issuance, sale or purchase of securities offered or sold under this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, are not liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejection of this Plan or the offer, issuance, sale or purchase of securities.


VII.
**FEASIBILITY OF PLAN**

The Plan is premised on the Debtor's continuing to collect the rents on the Property. The tenant has always made the rental payments since the inception of the lease.

## VIII.
## RETENTION OF JURISDICTION

The Bankruptcy Court's jurisdiction shall be retained under the Plan as set forth in Article XIV of the Plan.

This Plan shall be the sole and exclusive remedy for any Creditor of the Debtors dealt with herein, so long as Debtors are not in default under the Plan.

## IX.
## ALTERNATIVES TO DEBTOR'S PLAN

If the Debtor's Plan is not confirmed, the Debtors' bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code.  Or in the alternative, the Lender may obtain relief for the automatic stay and be allowed to foreclosure on its interest. As set forth above, generally, a liquidation or forced sale yields a substantially lower amount. If the Property is sold at a forced sale the Debtor believes there is little likelihood that it will generate sufficient funds to pay the unsecured creditors.

## X
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

Claimants and Equity Interest Holders should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that there will be excess funds to pay Creditor Claims. The major risk associated with the Plan, is the Debtor's ability to rent the Property.

## XI.
## TAX CONSEQUENCES TO THE DEBTOR

Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor.  Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder.  **CLAIMANTS ARE URGED TO CONSULT THEIR OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE AND LOCAL TAX LAWS**.

Under the terms of this Plan, the creditor's should not suffer any negative tax consequences as a result of the Plan because all creditors will be paid in full the amounts owed to them.

## XII.
## PENDING OR ANTICIPATED LITIGATION

Debtors have  evaluated potential claims which may be brought pursuant to the Bankruptcy Code or other laws. The Debtor is not aware of any such claims that could be brought that would benefit the estate at this time since all creditors are receiving full payment. .

Dated: December 28, 2010.

Respectfully submitted,

Shafer Plaza LII, Ltd.


  /s/ Steve Shafer          
By: Steve Shafer
Its: Manager of  General Partner

LIQUIDATION ANALYSIS - EXHIBIT C

|  | CHAPTER 7 | CHAPTER 11 |
|---|---|---|
| ASSETS |  |  |

| | | |
|---|---|---|
| PROPERTY | 4,000,000[2] | 4,405,000 |
| FURNITURE | 10,000[3] | 10,000 |
| | | |
| LIABILITIES | | |
| | | |
| ADMINISTRATIVE | 10,000 | 10,000 |
| TAXES | 80,000 | 80,000 |
| SECURED | 4,405,000 | 4,405,000 |
| UNSECURED | 450,000 | 200,000[4] |
| | | |
| DIVIDEND TO UNSECURED | 0% | 100% |

---

[2]The debtor does not believe the lender would foreclose on the property for an about in excess of its current debt, and the debtor believes that a forced sale after costs of sale would not result in an amount in excess of the secured debt.

[3]The Debtor has some property left by a former tenant that may have some resale value

[4]The Debtor under the plan would not be paying the insider creditors on their claims.